IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|

BONNIE TAYLOR,

    Plaintiff,

      v.                               Civil Action No. RDB-16-0336

SOMERSET COUNTY
COMMISSIONERS, *et al.*,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Bonnie Taylor ("Plaintiff" or "Taylor"), brings this action against Defendants Board of County Commissioners for Somerset County, Maryland[1] ("Somerset County"), Louis Hickman ("Hickman"), County Council of Dorchester County ("Dorchester County"), Steve Mills ("Mills"), State of Maryland ("the State") and Carroll Parrish ("Parrish"), alleging negligence under Maryland law (Counts I-III), a violation of her rights under the Eighth Amendment of the United States Constitution, U.S. Const. amend. VIII (Count IV), and a violation of her rights under Article 25 of the Maryland Declaration of Rights (Count V). Specifically, Plaintiff claims that Wardens Hickman, Mills, and Parrish deliberately delayed her access to adequate medical treatment for her injured wrist during her periods of incarceration at the Somerset County Detention Center, the Dorchester County Detention Center, and the Maryland Correctional Institute for Women. Furthermore, she

---

[1] Plaintiff's Complaint (ECF No. 2) names "Somerset County Commissioners" as a defendant to this action. The correct appellation for this entity, however, is the "Board of County Commissioners for Somerset County, Maryland."

alleges that Hickman, Mills and Parrish acted in accordance with and in furtherance of an alleged improper policy or custom to violate inmates' Eighth Amendment rights.

Currently pending are Defendants Hickman and Somerset County's Motion to Dismiss (ECF No. 15); Defendants Mills and Dorchester County's Motion to Dismiss (ECF No. 17); Defendants Parrish and the State's Motion to Dismiss (ECF No. 25); and Plaintiff's Motion to Show Substantial Compliance with the Maryland Tort Claims Act ("MTCA") and Good Cause to Waive the Notice Requirement of the Local Government Tort Claims Act ("LGTCA") (ECF No. 31). The parties' submissions have been reviewed, and a hearing on the pending Motions was held on July 8, 2016.

For the reasons that follow, Defendants Hickman and Somerset County's Motion to Dismiss (ECF No. 15) is GRANTED IN PART and DENIED IN PART; Defendants Mills and Dorchester County's Motion to Dismiss (ECF No. 17) is GRANTED IN PART and DENIED IN PART; Defendants Parrish and the State's Motion to Dismiss (ECF No. 25) is GRANTED IN PART and DENIED IN PART; and Plaintiff's Motion to Show Substantial Compliance with the MTCA and Good Cause to Waive the Notice Requirement of the LGTCA (ECF No. 31) is DENIED.[2] Specifically, all claims against the State of Maryland are DISMISSED WITH PREJUDICE; all state law claims (Counts I, II, and V) against Somerset County, Dorchester County, Hickman, and Mills are DISMISSED WITH PREJUDICE; the claims against Somerset and Dorchester Counties with respect to an

---

[2] For the reasons explained *infra*, Taylor has failed to demonstrate substantial compliance with the notice requirement of the Maryland Tort Claims Act and good cause to waive the notice requirement of the Maryland Local Government Tort Claims Act.

unconstitutional policy or custom[3] are DISMISSED WITHOUT PREJUDICE; all claims (Counts III, IV, and V) remain pending against Warden Parrish in his individual capacity; and the Eighth Amendment claim (Count IV) remains pending against Hickman and Mills in their individual capacities.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On July 31, 2012, Taylor was arrested in Ocean City, Maryland for violation of probation for not reporting a change of address. Compl. ¶ 20, ECF No. 2. Subsequently, she was incarcerated at the Somerset County Detention Center, where Hickman served as warden. *Id.* ¶¶ 21-22. On August 31, 2012 Taylor, while an inmate at Somerset County Detention Center, fell and injured her left wrist. *Id.* ¶ 23. Following the injury, Taylor was taken to Peninsula Regional Medical Center (PRMC), where she was found to have a comminuted intra-articular distal radius fracture with angulation and dorsal displacement. *Id.* ¶ 24. Accordingly, PRMC performed a closed reduction of the fracture and told Taylor to follow up with an orthopedic surgeon in five to seven days. *Id.*

On September 5, 2012 Taylor saw Dr. Richard Kang at Peninsula Orthopedics. *Id.* ¶ 25. Dr. Kang concluded that the fracture was in an acceptable position and chose not to perform surgery. *Id.* He instructed her to return in one week for follow-up. *Id.* On September 12, 2012 Taylor saw Dr. Kang for another appointment. *Id.* ¶ 26. At the check-

---

[3] Under *Monell v. Dep't of Soc. Servs of City of New York*, 436 U.S. 658 (1978), a Section 1983 cause of action may lie against a local government or municipality when execution of the government's unconstitutional policy or custom causes a plaintiff injury. For the reasons discussed *infra* in Section III. b., Plaintiff has failed to sufficiently allege a *Monell* claim.

up, Dr. Kang concluded that the left distal radius was in an unacceptable position and recommended an open reduction internal fixation surgery. *Id.* ¶ 26. The prison guard from Somerset Detention Center who had accompanied Taylor told Dr. Kang that surgery could not be performed the next day because she was scheduled to be transferred from Somerset Detention Center to another facility. *Id.* ¶ 27.

The Somerset County Detention Center did not schedule Taylor for surgery. *Id.* ¶ 28. Instead, on September 13, 2012, Hickman transferred her to the Dorchester County Detention Center, where Mills served as Warden. *Id.* ¶¶ 27, 29, 30. The Dorchester County Detention Center did not schedule Taylor for an appointment with any orthopedic surgeon. *Id.* ¶ 31.  Accordingly, she did not have surgery to mend her injured wrist while incarcerated at Dorchester Detention Center. *Id.* ¶ 31.

At some point between September 18, 2012 and September 21, 2012, the Dorchester County Detention Center transferred Taylor to the Maryland Correctional Institute for Women ("MCI-W") in Jessup, Maryland. *Id.* ¶ 32. Carroll Parrish served as the Warden at MCI-W. *Id.* ¶ 33. On September 21, 2012 Taylor had an intake exam at the facility. *Id.* ¶ 35. The intake revealed that she had a left wrist fracture and that orthopedic follow-up was requested. *Id.* Finally, on October 9, 2012 Dr. Lawrence Manning saw Taylor for her first follow-up since Dr. Kang recommended surgery. *Id.* ¶ 36. Dr. Manning noted that Taylor's wrist had become deformed and that her fracture had healed improperly, causing a shortening of the radius. *Id.* ¶ 37. He recommended physical therapy, but not surgery. *Id.*

On April 19, 2013 Taylor saw Dr. Ashok Krishnaswamy, her first visit with an orthopedic surgeon since her visit with Dr. Manning in October. *Id.* ¶ 38. Dr. Krishnaswamy

recommended reconstructive surgery on Taylor's left wrist. *Id.* On October 10, 2013—more than one year after Taylor's initial injury—he performed that surgery at Bon Secours Hospital. *Id.*

Taylor subsequently filed suit in the Circuit Court for Anne Arundel County bringing five counts against all defendants: negligence under Maryland law (Counts I-III); a violation of her Eighth Amendment rights pursuant to 41 U.S.C. § 1983 (Count IV); and a violation of her rights protected by Article 25 of the Maryland Declaration of Rights (Count V). Defendants timely removed the action to this Court on February 5, 2016. Joint Notice of Removal, ECF No. 1. All Defendants then moved to dismiss the Complaint (ECF Nos. 15, 17, 25). In partial response to the Defendant's Motions, Taylor has filed a Motion to Show Substantial Compliance with the MTCA and Good Cause to Waive the Notice Requirement of the LGTCA (ECF No. 31). This Court held a hearing on the pending Motions on July 8, 2016.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. While the plausibility requirement does not impose a "probability requirement," *Twombly*, 550 U.S. at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its

6

judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

### I. State of Maryland

#### a. Counts III and V

In Counts III and V, Taylor asserts two claims against the State of Maryland: negligence (Count III), and a violation of Articles 25 of the Maryland Declaration of Rights (Count V). In Maryland, the common law doctrine of sovereign immunity prohibits plaintiffs from bringing tort actions against the State absent specific legislative consent to suit. *Dep't of Natural Res. v. Welsh*, 521 A.2d 313, 315 (Md. 1986). A plaintiff may assert a common law or state constitutional tort claim against the State of Maryland or one of its agencies only if he first complies with the notice requirements of the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12–101, *et seq.*, which provides a limited waiver of state sovereign immunity. As the Maryland Court of Appeals has explained, "notice under the MTCA plays an integral part . . . in the invocation of waiver of the State's sovereign immunity." *Barbre v. Pope*, 935 A.2d 699, 710 (Md. 2007). The MTCA thus commands a plaintiff to provide written notice to the State Treasurer or its designees within one year of the alleged injury. *Id.* Such notice is designed to "afford[ ] the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Haupt v. State*, 667 A.2d 179, 183 (Md. 1995). As

such, the notice requirement is "strictly enforced." *McDaniel v. Maryland*, Civ. A. No. RDB-10-0189, 2010 WL 3260007, at *3 (D. Md. Aug. 18, 2010).

As a preliminary matter, Taylor concedes that she "did not strictly comply with the notice requirements" of the MTCA. Pl.'s Mot. to Show Substantial Compliance 4, ECF No. 31. Instead, she argues that she substantially complied with these requirements by (1) sending a Request for Administrative Remedy form to Parrish; and (2) outlining her claim in a letter to the Inmate Grievance Office. She argues that these actions satisfied the purposes of the MTCA by alerting the State of her allegations and thereby allowing a timely investigation of her claims.

While Maryland courts recognize a substantial compliance exception to the MTCA, the doctrine is "narrowly construed." *Royster v. Gahler*, Civ. A. No. ELH-15-1843, 2015 WL 9582977, at *11 (D. Md. Dec. 31, 2015) (quoting *McDaniel*, 2010 WL 3260007, at *4). Indeed, "the doctrine of substantial compliance . . . is not license to ignore the clear mandate of the MTCA." *Chinwuba v. Larsen*, 790 A.2d 83, 98 (Md. Ct. Spec. App. 2002), *rev'd on other grounds*, 832 A.2d 193 (Md. 2003). A plaintiff may substantially comply with the notice requirements of the MTCA by providing notice that, although technically deficient, nevertheless serves the purpose of the statute. *Conaway v. State*, 600 A.2d 1133, 1137-38 (Md. 1992). In *Conaway*, the Court of Appeals explained that the purposes of the MTCA notice provisions are satisfied "when the State has requisite and timely notice of the facts and circumstances of the incident giving rise to the claim." *Id.* at 246. (quoting *Radtke v. City of Milwaukee*, 342 N.W.2d 435, 438 (Wis. 1984). The doctrine of substantial compliance,

however, "has no application to an outright failure to comply." *Royster v. Gahler*, 2015 WL
9582977, at *9 (quoting *Simpson v. Moore*, 592 A.2d 1090, 1096 (Md. 1989)).

Taylor relies on *Conaway* and *Paulone v. City of Frederick*, 718 F. Supp. 2d 626 (D. Md.
2010), to support her argument that her correspondence with Parrish and the Inmate
Grievance Office constitute substantial compliance with the MTCA. Yet, neither case
counsels such a conclusion. Rather, *Conaway* and *Paulone* stand only for the proposition that
minor infirmities within the content of timely notice sent to the State Treasurer will not
vitiate a claim against the State. In *Conaway*, a plaintiff injured at the Maryland Division of
Correction Brockbridge facility in Jessup sent written notice of his injury to the State
Treasurer within the MTCA's notice period, but omitted a demand for specific damages.
*Conaway*, 600 A.2d at 1134. The Court of Appeals held that, although the content of the
plaintiff's notice to the Treasurer did not literally comply with the notice requirements of the
MTCA, it nevertheless substantially complied with the requirements because it "provided the
State with sufficient written notice of the circumstances of the underlying incident to enable
it to investigate the claim and respond either by settlement or defense." *Id.* at 1140 (internal
quotation marks omitted). Likewise, this Court in *Paulone* concluded that a plaintiff who had
sent a letter to the State Treasurer within the statutory notice period, but without explicitly
stating claims against the State for negligent training and supervision, substantially complied
with the MTCA. *Paulone*, 718 F. Supp. 2d at 637. This Court reasoned that her letter's
lengthy explanation of her allegations against the State "provided adequate notice of the
facts and circumstances giving rise to her tort claim against the State." *Id.* Both of these cases
involve minor deficiencies found within the content of timely notice provided to the State

9

Treasurer. Neither case addresses whether substantial compliance may be found when, as here, notice is sent to some other entity. Accordingly, *Conaway* and *Paulone* are of limited value in this case.

Moreover, this Court is unaware of any decision finding substantial compliance with the MTCA when, as here, a plaintiff sends notice to an entity other than the State Treasurer. To the contrary, the *Barbre* plaintiff argued that he had substantially complied with the notice requirements of the MTCA by sending notice to a County Commissioner within the one-year notice period, and subsequently sending notice to the Treasurer after the one-year deadline had expired. *Barbre*, 935 A.2d at 711. There, as here, the *Barbre* plaintiff relied on *Conaway* in asserting that his defective notice substantially complied with the MTCA by provoking the State's investigation of the incident that gave rise to his claim. *Id*. The Maryland Court of Appeals rejected this argument. *Id*. at 713. Recalling other cases in which courts had rejected the notification of entities other than the State Treasurer as substantial compliance, the Court of Appeals held:

> "[i]f neither the Comptroller, nor the Attorney General, nor any other State officer, nor an 'insurer . . . who provides services to the Treasurer as an independent contractor' qualifies as a Treasurer's designee, then neither does a county officer such as a county commissioner."

*Id*. (quoting *Pope v. Barbre*, 915 A.2d 448, 455 (Md. Ct. Spec. App. 2007)). Sending correspondence to Warden Parrish and the Inmate Grievance Office likewise constitutes neither strict nor substantial compliance with the MTCA.  Accordingly, Count III and Count V are DISMISSED WITH PREJUDICE against the State of Maryland.

### b. **Count IV**

Taylor additionally alleges, pursuant to 42 U.S.C. § 1983, that the State of Maryland violated her rights protected by the Eighth Amendment to the United States Constitution. U.S. Const., amend. VIII. Section 1983 creates a private right of action for any United States citizen seeking to remedy alleged constitutional violations. 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Under the Eleventh Amendment, the State of Maryland is entitled to sovereign immunity. U.S. Const., amend. XI. Although the MTCA represents a limited waiver of sovereign immunity, the MTCA has no effect on the immunity afforded by the Eleventh Amendment for suits in federal courts. *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 397-98 (4th Cir. 1990). Even if Maryland had waived its immunity, it is well-established that states and their agencies are not considered "persons" under 42 U.S.C. § 1983. As such, states and state agencies are not subject to federal civil rights claims under the statute. *Will v. Michigan*

11

*Dep't. of State Police*, 491 U.S. 58, 65 (1989).  As a result, Taylor's Section 1983 claim against the State of Maryland is DISMISSED WITH PREJUDICE.

## II. Warden Parrish

### a. Counts III and V

Unlike the claims asserted against the State of Maryland, failure to comply with the MTCA notice provisions does not bar Plaintiff's state claims against Warden Parrish. *Sykes v. Wicomico Cnty.*, Civ. No. CCB-05-2846, 2007 WL 1073607, at *8 (D. Md. Mar. 30, 2007) ("Because the notice provisions of the MTCA do not implicate individual state employees, Sykes's possible failure to comply with the MTCA does not bar his claim."); *See also Barbre*, 935 A.2d at 699 (affirming dismissal of claims against the state for failure to comply with the MTCA notice requirement, but reversing dismissal of claims against state employee because plaintiff sufficiently alleged malice and gross negligence). Nevertheless, state personnel who act within the scope of their public duties and without malice or gross negligence are immune from suit and liability in tort. Md. Code Ann., Cts. & Jud. Proc. § 5-522(b); Md. Code Ann., State Gov't § 12-105. To defeat this immunity, a plaintiff must "*sufficiently* allege[]" that the state personnel acted with malice or gross negligence. *Barbre*, 935 A.2d at 714 (emphasis in original). Taylor contends that she has sufficiently alleged that Parrish acted with malice or gross negligence. Yet, she also acknowledges that she did not explicitly allege malice in her Complaint.

On the one hand, the Complaint does not raise a plausible inference that Parrish acted with malice. "Plaintiffs face a high standard when pleading malice." *McDaniel*, 2010 WL 3260007, at *8. In Maryland, malice is "conduct characterized by evil or wrongful motive,

12

intent to injure, knowing and deliberate wrongdoing, ill-will or fraud . . ." *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (quoting *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999) (internal quotation marks omitted). A state official thus must "actually and subjectively intend to do wrong or harm" to act with malice. *Marks v. Dann*, 600 Fed. App'x 81, 86 (4th Cir. 2015). The official's conduct must be more than "merely reckless or wanton." *Id.* (quoting *Shoemaker*, 725 A.2d at 560). As Plaintiff omits any allegations that Parrish "actually and subjectively intended to do wrong or harm," she has not sufficiently alleged that Parrish acted with the requisite malice.

On the other hand, the Complaint does sufficiently allege gross negligence. Under Maryland law, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre*, 935 A.2d at 717 (quoting *Linscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985). Plaintiff alleges that Parrish, as Warden of the Maryland Correctional Institute for Women, owed a duty to Taylor and other inmates to ensure that they received adequate medical care. Compl. ¶ 15. She explains that Parrish "knew" that she had a broken wrist requiring surgery. *Id.* ¶¶ 34, 52. Despite this knowledge, she did not receive surgery until October 10, 2013—over one year after she was transferred to the State facility. *Id.* ¶¶ 29, 38. At this early stage, such allegations are sufficient to raise a plausible inference that Parrish thoughtlessly disregarded the consequences of his failure to ensure that Taylor received adequate medical care. Her state law claims against Warden Parrish thus are not

precluded by state personnel immunity at this time.[4] Accordingly, Counts III and V remain
pending against Parrish.[5]

### b. Count IV

Taylor also directs Count IV at Warden Parrish, alleging that the Warden subjected
her to cruel and unusual punishment in violation of her Eighth Amendment rights.
Specifically, Taylor alleges that Parrish was deliberately indifferent to her serious medical
needs. This claim is asserted against Parrish in his individual and official capacities and seeks
monetary damages as a remedy.

As a threshold matter, this Court observes that the Eleventh Amendment extends
immunity to state officials sued in their official capacities for monetary damages under
Section 1983. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985); *see also Will v. Mich. Dep't of
State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity
is not a suit against the official but rather is a suit against the official's office"). Therefore,
Taylor's Section 1983 claims must be DISMISSED WITH PREJUDICE insofar as they seek
to hold Parrish liable in his official capacity.

With respect to Parrish's individual capacity, Taylor has stated a claim for relief under
the Eighth Amendment. As the United States Supreme Court has explained, "to establish
personal liability in a § 1983 action, it is enough to show that the official, acting under color

---

[4] As the Complaint sufficiently alleges gross negligence, Parrish is also not entitled to common law public
official immunity at this time. *See Cooper v. Rodriguez*, 118 A.3d 829, 849 (Md. 2015) (". . . gross negligence is an
exception to common law public official immunity.").

[5] Article 25 is construed *in pari materia* with the Eighth Amendment. *See, e.g., Arvanis v. Somerset County*, 664
A.2d 888, 894 (Md. 1995) (". . . it is well settled in this State that Article 25 of the Maryland Declaration of
Rights is *in para materia* with the Eighth Amendment."), *cert. denied*, 516 U.S. 1115 (1996). Therefore, for
substantially the same reasons that she has sufficiently alleged a violation of her Eighth Amendment rights, as
discussed *infra* in Section II. b., Plaintiff has also sufficiently alleged a violation of her rights protected under
Article 25. Therefore, Plaintiff's Article 25 claim (Count V) remains pending against Parrish.

of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166. To state an

Eighth Amendment claim for denial of medical care, a plaintiff must sufficiently allege that

the defendants' actions or inactions amounted to deliberate indifference to a serious medical

need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference arises when a prison

official "knows of and disregards an excessive risk to inmate health or safety." *Jackson v.

Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837

(1994)). It "entails something more than mere negligence," but also "something less than

acts or omissions for the very purpose of causing harm or with knowledge that harm will

result." *Farmer*, 511 U.S. at 835. Indeed, "delayed medical treatment can constitute a

manifestation of deliberate indifference." *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009).

As Parrish does not appear to dispute that Taylor's broken wrist qualifies as objectively

serious, the only issue before this Court is whether Taylor has sufficiently alleged deliberate

indifference by Parrish.[6]

Purposely delaying a prisoner's medical treatment can constitute deliberate

indifference. *Smith*, 589 F.3d at 739. In *Smith*, the plaintiff alleged that the defendant, a

registered nurse at the prison where he was incarcerated, deliberately destroyed his treatment

authorization, thereby delaying his receipt of medical services. *Id.* at 737. He argued that her

actions constituted a violation of his Eighth Amendment rights. *Id.* The United States Court

of Appeals for the Fourth Circuit reversed the district court's dismissal, explaining that "in

pleading that [the defendant] destroyed the means for him to access the medical treatment

---

[6] Regardless, it is well established that a broken wrist is a serious injury. *See, e.g., Harris v. Frazier*, Civ. A. No. 3:07-CV-701, 2009 WL 890161, at *7 (E.D. Va. 2009) ("It is without question that a broken wrist would meet the first prong for deliberate indifference because a fractured wrist would be understood by a layman to be a serious injury requiring medical attention.")

ordered by the doctor, Smith alleged facts sufficient to constitute intentional denial of treatment because mere delay or interference can be sufficient to constitute a violation of the Eighth Amendment." *Id.* at 739. Accordingly, it was "clear that Smith made out a claim for deliberate indifference." *Id.*

Taylor alleges facts substantially similar to those alleged in *Smith*. As explained *supra*, the Complaint alleges that, as Warden of MCI-W, Parrish owed a duty to Taylor and other inmates to ensure that they received adequate medical care. Compl. ¶ 15. She explains that Parrish personally "knew" that she had a broken wrist requiring surgery. *Id.* ¶¶ 34, 52. Despite this knowledge, Parrish allegedly deliberately delayed and denied Ms. Taylor medically necessary treatment. *Id.* ¶ 50. Indeed, she did not receive surgery until October 10, 2013—over one year after she was transferred to the Maryland facility. *Id.* ¶¶ 29, 38. Although the *Smith* plaintiff alleged that the defendant purposely destroyed her medical authorization, while Taylor merely alleges that Parrish knew of her injury and deliberately delayed her treatment, this distinction is immaterial. The focus of the inquiry is not the precise manner in which the official delays the medical treatment. Rather, it is whether he has done so deliberately and with knowledge of the plaintiff's serious medical injury. Taylor's allegations are sufficient at this stage to raise a plausible inference that Parrish acted with deliberate indifference by intentionally delaying her medical care.

Parrish alternatively argues that he is entitled to qualified immunity. Government officials are generally protected by qualified immunity when they perform the discretionary duties of their offices. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts have traditionally engaged in a two-step analysis when determining whether an officer is protected

by qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). First, a court determines whether a constitutional right has been violated. Second, "assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 (2001)). The United States Supreme Court recently modified this rigid, two-tiered approach, by allowing reviewing judges to evaluate the two factors in whatever order they wish, in view of the unique facts of a case. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Warden Parrish is not entitled to qualified immunity at this stage. For the reasons explained *supra*, Taylor has sufficiently alleged that Parrish violated her Eighth Amendment right. That deliberate indifference to a serious medical need violates the Eighth Amendment was clearly established at the time of the present alleged constitutional violation. *See, e.g.*, *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 837; *Smith*, 589 F.3d at 739. Moreover, this Court is mindful that the qualified immunity issue is dependent on a fact-intensive inquiry better conducted after the parties have had the opportunity to engage in discovery. Accordingly, at this time, Parrish is not entitled to qualified immunity. Count IV thus remains pending against him.

## III.   The County Defendants

### a.  Counts I, II, and V

Turning to the County Defendants, Plaintiff asserts both state common law (Counts I and II) and state constitutional claims (Count V). The Local Government Tort Claims Act ("LGTCA") requires local governments to defend and indemnify their employees for the

tortious acts the employees commit within the scope of their employment and without malice.[7] Md. Code Ann., Cts. & Jud. Proc. § 5-302; *Ashton v. Brown*, 660 A.2d 447, 465-66 (Md. 1995). The LGTCA requires prospective plaintiffs to give local government defendants notice of claims within one year of injury.[8] § 5-304(a). The notice must be in writing and state the time, place, and cause of the injury. § 5-304(b)(2). Finally, the notice must be delivered in person or by certified mail to the applicable county solicitor or county attorney. § 5-304(c)(2)-(3). The LGTCA's notice requirement is intended to protect a government entity from "meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation." *Williams v. Maynard*, 754 A.2d 379, 385 (Md. 2000) (internal quotation marks omitted). The requirement generally governs both common law and state constitutional torts alike. *Rounds v. Md.-Nat'l Capital Park & Planning Comm'n*, 109 A.3d 639, 651-52 (Md. 2015). Compliance with the requirement is a condition precedent to bringing an action directly against a local government entity or its employees. *Id.* at 651. Nevertheless, defective notice is not always fatal to a claim against a local entity or employee. Section 5-304(d) provides that "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." Good cause is

---

[7] Plaintiff argues that the Complaint establishes that the wardens' actions were performed with actual malice. The LGTCA defines malice as "ill will or improper motivation." Md. Code Ann., Cts. & Jud. Proc. § 5-301(b). Malice for purposes of the LGTCA has also been equated with an "evil or rancorous motive influenced by hate." *Gray v. Kern*, 143 F. Supp. 3d 363, 369 (D. Md. 2016). Plaintiff has failed to allege malice, however, because the Complaint lacks facts sufficient to raise a plausible inference of "ill will" or an "evil or rancorous motive."

[8] An amendment extending the notice period to one year became effective October 1, 2015. At all relevant times, the LGTCA required notice within 180 days of injury.

18

measured by a standard "of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Moore v. Norouzi*, 807 A.2d 632, 641 (Md. 2002) (citation and internal quotation marks omitted).

Taylor "concedes that she did not strictly comply with the notice requirements" of the LGTCA. Pl.'s Mot. to Show Substantial Compliance at 4. Nonetheless, she asserts that she has demonstrated good cause to waive the LGTCA's notice requirements because "as a prisoner, [she] did the best she could to investigate" how to comply. *Id.* at 8. She offers correspondence to Warden Parrish and the Inmate Grievance Office at MCI-W to demonstrate that she "investigated, pursued, and prosecuted her claims against all three prisons with the diligence of an ordinarily prudent inmate." *Id.* at 9.

Yet, mere ignorance of the LGTCA's formal notice requirements does not constitute good cause to excuse compliance. *Bibum v. Prince George's County*, 85 F. Supp. 2d 557, 565 (D. Md. 2000). In *Bibum*, the plaintiff argued that he had established good cause to waive the LGTCA notice requirement as he had sent a complaint form, provided to him by police officers, to police headquarters within one month of his alleged injury. *Id.* at 564-65. This Court disagreed, explaining "[t]hat Bibum simply did not know about the formal notice requirements of the LGTCA does not constitute good cause for his failure to comply." *Id.* at 565. Bibum could have "consulted an attorney on the matter," but failed to do so even though he "clearly knew that he had a basis for filing a civil claim." *Id.* at 565, 565 n.7.

In this case, Plaintiff's allegations are materially similar to those of *Bibum*. Both she and the *Bibum* plaintiff believed that they had reason to file a civil action, yet they both failed

to comply with the LGTCA notice requirement. Just as the *Bibum* plaintiff believed that his formal complaint to police constituted sufficient notice, Plaintiff maintained a similar, incorrect understanding of the effect of her formal complaint to the Inmate Grievance Office. Moreover, just as the *Bibum* plaintiff had the ability to consult legal counsel, Somerset and Dorchester County Circuit Court dockets reveal that Taylor was represented by criminal defense counsel while she was incarcerated in the respective counties. Her incarceration thus did not impede her from learning of the requisite LGTCA notice. An ordinary prudent inmate, if represented by counsel, would at the very least have consulted that counsel. Accordingly, Taylor has failed to show good cause for failing to comply with the notice requirements of the LGTCA. Counts I, II, and V are DISMISSED WITH PREJUDICE as to all County Defendants.

### b.  Count IV

Taylor also asserts the Eighth Amendment claim of Count IV against the County Defendants. Once again, the Wardens—here, Hickman and Mills—are named in their individual and official capacities.

As a preliminary matter, the official capacity claims against the County employees are equivalent to claims against the Counties themselves. *See Huggins v. Prince George's County*, 683 F.3d 525, 532 n.3 (4th Cir. 2012) ("... we treat the County and the Officials sued in their official capacities as the County.") Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a Section 1983 cause of action may lie against a local government or municipality when execution of the government's unconstitutional policy or custom causes a plaintiff injury. *See also Walker v. Prince George's Co.*, 575 F.3d 426, 431 (4th Cir. 2009) (stating

that the liability of the municipality only arises where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom). In order to support a *Monell* claim, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall v. Prince George's County*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted).

The Complaint contains a sole allegation of an unconstitutional policy or custom:

> The above described acts and omissions, which constituted unconstitutional cruel and unusual punishment suffered by Ms. Taylor, was [sic] part of an official policy or custom and was part of an official culture of deliberate ignorance and indifference to the health and medical needs of inmates, and specifically Ms. Taylor.

Compl. ¶ 53. Relying on *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), and *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994), Plaintiff argues that this wholly conclusory allegation is sufficient to state a claim under *Monell*. In the context of a *Monell* claim, the Supreme Court held in *Leatherman* that "[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman*, 507 U.S. at 168. The Fourth Circuit reiterated this lenient standard, explaining that "[t]here is no requirement that [a plaintiff] detail the facts underlying his claims[.]" *Jordan*, 15 F.3d at 339.

Yet, both of these cases pre-date *Twombly* and *Iqbal*, the controlling cases on the requisite pleading standard under Rule 8(a) of the Federal Rules of Civil Procedure. *Iqbal* and *Twombly* established that a Plaintiff must plead a *plausible* claim for relief, and not merely

recite conclusory allegations devoid of any factual support. *Iqbal*, 556 U.S. at 679. In *Cook v. Howard*, 484 F. App'x 805 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 1600 (2013), the Fourth Circuit considered the effect of *Twombly* and *Iqbal* on the pleading requirements for alleging an "official policy or custom" under *Monell*. Citing the inherent discrepancy between the leniency of *Leatherman* and *Jordan* and the specificity required by *Iqbal* and *Twombly*, the Fourth Circuit affirmed this Court's dismissal of the *Monell* claims against the Baltimore City Police Department and its officials. *Id.* at 810-11. Specifically, the Court explained that the plaintiff's proffered amended complaint was "merely a [t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Cook*, 484 Fed. App'x at 811 (quotations omitted). Such allegations were insufficient to state a claim.

This Court reached a similar conclusion in *Drury v. Dzianowski*, Civ. A. No. MJG-15-3845, 2016 WL 1045801 at *3 (D. Md. Mar. 16 2016). In *Drury*, this Court dismissed the *Monell* claim after the plaintiff "present[ed] no more than conclusory allegations that there was an actionable policy or custom and reference to the alleged actions by the Active Defendants." *Id.* Once again, *Iqbal* and *Twombly* required more.[9]

Plaintiff's sole reference to an "official policy and custom" and to an "official culture of deliberate ignorance" are precisely the "threadbare recitals of the elements of a cause of action" that *Twombly*, *Iqbal*, *Cook*, and *Drury* rejected. Accordingly, Count IV is DISMISSED

---

[9] This Court notes that a recent opinion of this Court, *Jackson v. Pena*, 28 F. Supp. 3d 423 (D. Md. 2014), essentially applied the lower pleading standard of *Jordan* to a *Monell* claim. *Jackson*, however, ignores the thorough analysis of the *Iqbal* and *Twombly* effects on the *Monell* pleading requirements conducted by the Fourth Circuit in *Cook*. In light of that analysis, as well as its application in *Drury*, Taylor has not sufficiently alleged a *Monell* claim.

WITHOUT PREJUDICE as to the Counties and the County Wardens in their official capacities.[10]

With respect to Taylor's claims against Hickman and Mills in their individual capacities, she has sufficiently stated a claim for relief. As with the claims against Warden Parrish, Plaintiff proceeds under a deliberate indifference theory against Wardens Hickman and Miller.[11] She alleges that Hickman and Mills, as wardens of the Somerset and Dorchester County Detention Centers, respectively, were responsible for overseeing the healthcare of their inmates and any transfer of inmates to other prisons. Compl. ¶¶ 12, 14. Hickman and Mills allegedly "had actual knowledge" that Taylor had a broken wrist requiring surgery. *Id.* ¶¶ 28, 31, 34.  Despite this knowledge, Hickman and Mills both transferred Taylor without ensuring that she received the surgery required for her injury. *Id.* ¶¶ 29, 32. At this stage, these facts are sufficient to raise a plausible inference that Hickman and Mills exhibited deliberate indifference to Taylor's serious medical needs by delaying her treatment, thereby violating the Eighth Amendment.[12]

## CONCLUSION

For the reasons stated above, Defendants Hickman and Somerset County's Motion to Dismiss (ECF No. 15) is GRANTED IN PART and DENIED IN PART; Defendants Mills and Dorchester County's Motion to Dismiss (ECF No. 17) is GRANTED IN PART and DENIED IN PART; Defendants Parrish and the State's Motion to Dismiss (ECF No.

---

[10] In the alternative, Plaintiff seeks leave to amend her Complaint to comply with the pleading standards articulated in *Twombly and Iqbal*. While Count IV is dismissed, Plaintiff is free to amend her Complaint only with regard to any *Monell* claim against the Counties.

[11] The standards for alleging an Eighth Amendment violation under a deliberate indifference theory is discussed *supra* in Section II. b. Defendants do not dispute that Taylor's injury was serious.

[12] For substantially the same reasons discussed *supra* in Section II. b., neither Hickman nor Mills is entitled to qualified immunity at this early stage.

25) is GRANTED IN PART and DENIED IN PART; and Plaintiff's Motion to Show Substantial Compliance with the MTCA and Good Cause to Waive the Notice Requirement of the LGTCA (ECF No. 31) is DENIED. Specifically, all claims against the State of Maryland are DISMISSED WITH PREJUDICE; all state law claims (Counts I, II, and V) against Somerset County, Dorchester County, Hickman, and Mills are DISMISSED WITH PREJUDICE; the *Monell* claim against Somerset and Dorchester Counties in Count IV is DISMISSED WITHOUT PREJUDICE; the claims set forth in Counts III, IV, and V remain pending against Warden Parrish in his individual capacity; and the Eighth Amendment claim set forth in Count IV remains pending against Hickman and Mills in their individual capacities.

      A separate Order follows.

Dated: July 19, 2016                        ____/s/_____

                                       Richard D. Bennett
                                       United States District Judge